IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


SHARED MEMORY GRAPHICS LLC,

    Plaintiff,       Case No. 09-5128 RTD

v.

APPLE INC.; SAMSUNG ELECTRONICS CO.;
SAMSUNG SEMICONDUCTOR, INC.;
SAMSUNG AUSTIN SEMICONDUCTOR, LLC;
SAMSUNG ELECTRONICS AMERICA, INC.;
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC; NINTENDO OF AMERICA
INC.; NINTENDO CO. LTD.; SONY
CORPORATION OF AMERICA; SONY
COMPUTER ENTERTAINMENT AMERICA
INC.; SONY CORPORATION; SONY
COMPUTER ENTERTAINMENT INC.; and
SONY SEMICONDUCTOR KYUSHU
CORPORATION LTD.,

    Defendants.


**DEFENDANTS APPLE, SAMSUNG, AND SONY'S BRIEF IN SUPPORT OF THEIR
JOINT MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF
CALIFORNIA**

**Table of Contents**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.    The Lawsuit ............................................................................................ 2

    B.    The Plaintiff ........................................................................................... 3

    C.    The Moving Defendants ......................................................................... 4

        1.    Apple ........................................................................................... 4

        2.    Samsung ...................................................................................... 4

        3.    Sony ............................................................................................ 6

    D.    Third-Party Witnesses and Evidence ..................................................... 8

III.  ARGUMENT ..................................................................................................... 9

    A.    Legal Standard ....................................................................................... 9

    B.    This Action Could Have Been Brought in the Northern District of
        California .............................................................................................. 10

    C.    The Convenience of the Parties Favors Transfer ................................. 10

        1.    The Northern District of California is more convenient for the
            moving defendants .................................................................... 10

        2.    The Northern District of California is also more convenient for
            SMG ......................................................................................... 13

    D.    The Convenience of the Witnesses Favors Transfer ............................ 13

        1.    The original patent assignee, named inventor, and prosecuting
            attorneys are located in the Northern District of California .................. 14

        2.    SMG's parent companies are located in California ............................... 15

        3.    The Northern District of California contains many witnesses and
            companies relating to prior art references................................. 15

    E.    The Interests of Justice and Other Factors Favor Transfer ................. 16

        1.    Localized interests favor transfer to the Northern District of
            California, which is at the center of the accused activity ....................... 16

        2.    SMG's choice of forum does not weigh against transfer........................ 17

    F.    The Three Defendant Groups (Nintendo, Sony, and Apple/Samsung) Are
        Misjoined ............................................................................................. 19

IV.   CONCLUSION................................................................................................. 20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**CASES**

*Acterna, LLC v. Adtech, Inc.*,
129 F. Supp. 2d 936 (E.D. Va. 2001) ......................................................................16

*Affinity Labs of Texas, LLC v. Apple Inc.*
No. 09-47 (E.D. Tex. Aug. 25, 2009) .................................................................11, 13

*Aten Int'l Co. v. Emine Tech. Co.*,
No. 08-253, 2009 WL 1809978 (E.D. Tex. June 25, 2009)....................................16

*Biometrics, LLC v. New Womyn, Inc.*,
112 F. Supp. 2d 869 (E.D. Mo. 2000).....................................................................10

*Broadcast Data Retrieval Corp. v. Sirius Satellite Radio Inc.*,
79 U.S.P.Q.2d (BNA) 1603, 2006 WL 1582091 (C.D. Cal. 2006) ....................2, 18

*Computer Cache Coherency Corp. v. Via Technologies, Inc.*,
No. 04-cv-9823 .....................................................................................................2, 18

*Data Retrieval Tech., LLC v. Sybase, Inc.*,
No. C08-1702, 2009 WL 960681 (W.D. Wash. Apr. 8, 2009)................................16

*Estate of Antonious v. Yonex Corp.*,
No. 08-3501, 2009 WL 1346617 (D.N.J. May 13, 2009)........................................16

*Fujitsu Ltd. v. Tellabs, Inc.*,
639 F. Supp. 2d 761 (E.D. Tex. 2009) ....................................................................17

*Genentech, Inc., In re*,
566 F.3d 1338 (Fed. Cir. 2009).............................................................9, 10, 11, 13

*Int'l Adm'rs., Inc. v. Pettigrew*,
430 F. Supp. 2d 890 (S.D. Iowa 2006) ..............................................................14, 17

*Laitram Corp. v. Hewlett-Packard Co.*,
120 F. Supp. 2d 607 (E.D. La. 2000) ......................................................................17

*Media Queue, LLC v. Netflix, Inc.*,
No. 08-402, 2009 WL 464456 (E.D. Okla. Feb. 24, 2009) .....................................17

*Naschem Co., Ltd. v. Blackswamp Trading Co.*,
No. 08-730, 2009 WL 1307865 (W.D. Wis. May 8, 2009).....................................19

*Nelson v. Soo Line Railroad Co.*,
    58 F. Supp. 2d 1023 (D. Minn. 1999) ...................................................................14

*Prism Techs., LLC v. Verisign, Inc.*,
    No. 08-195, 2008 WL 5111044 (D. Neb. Dec. 2, 2008) .............................10, 16, 17

*Prust v. Apple Inc.*
    No. 09-92 (E.D. Tex. Oct. 7, 2009) ......................................................................13

*Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*,
    435 F. Supp. 2d 578 (E.D. Tex. 2006) ..................................................................14

*Refined Recommendations Corp. v. Netflix, Inc.*,
    No. 07-4981, 2008 WL 474106 (D.N.J. Feb. 15, 2008) ......................................2, 18

*Sandvik Intellectual Property AB v. Kennametal Inc.*,
    No. 09-163 (W.D.N.C. Nov. 5, 2009) ....................................................................16

*Siddi v. Ozark Aircraft Sys., LLC*,
    No. 05-cv-5170, 2006 U.S. Dist. LEXIS 84882 (W.D. Ark. Nov. 21, 2006).........................19

*Surfer Internet Broad. of Miss. v. XM Satellite Radio Inc.*,
    No. 07-34, 2008 WL 1868426 (N.D. Miss. Apr. 24, 2008).................................17

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) ...........................................................................9, 16

*Thornton Drilling Co. v. Stephens Prod. Co.*,
    No. 06-00851, 2006 WL 2583659 (E.D. Ark. Sept. 6, 2006).............................13

*Trace-Wilco, Inc. v. Symantec Corp.*,
    No. 08-80877-CIV, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009)..........................16

*TS Tech USA Corp., In re*,
    551 F.3d 1315 (Fed. Cir. 2008).............................................................................9

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)...............................................................................................9

*Viasystems Techs., Corp. v. Forest City Commercial Dev., Inc.*,
    No. 08-124, 2008 WL 2064971 (E.D. Mo. May 14, 2008) ..................................16

*Volkswagen, In re*,
    371 F.3d 201 (Fed. Cir. 2004)..............................................................................13

*Wilson v. United States*,
    No. 05-562, 2006 WL 3431895 (E.D. Ark. Nov. 28, 2006).................................17

**STATUTES**

28 U.S.C. § 1391(c) ................................................................................................10

28 U.S.C. § 1400(b) ...............................................................................................10

28 U.S.C. §1404(a) ............................................................................................ passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 20, 21 .............................................................................................19

## I.   INTRODUCTION

This patent lawsuit has no meaningful connection to Arkansas, and should be transferred to the Northern District of California.  The two patents-in-suit, which relate generally to components of a computer graphics display system, issued to named inventor Chitranjan N. Reddy, a resident of the Northern District of California.  Mr. Reddy assigned the patents to Alliance Semiconductor Corporation ("Alliance"), also located in the Northern District of California.  Alliance later assigned three dozen patents, including the two patents-in-suit, to a California patent holding company named Acacia Patent Acquisition Corporation ("Acacia Acquisition").  Acacia Acquisition assigned the patents to its wholly-owned subsidiary, plaintiff Shared Memory Graphics LLC ("SMG"), also headquartered in California.[1]

Transfer to the Northern District of California is appropriate under section 1404(a) to promote the convenience of the parties and witnesses and to advance the interests of justice. None of the likely witnesses in this case is in Arkansas, and none of the design or development work regarding any of the accused products occurred in this district.  Transfer would be vastly more convenient for the moving defendants and non-party witnesses.[2]  The defendants have minimal, if any, connections to Arkansas and, by contrast, maintain substantial facilities and documents and employ numerous individuals potentially related to this case in the Northern District of California.  Transfer would be more convenient for numerous non-party witnesses located in the Northern District of California, including the named inventor, his assignee,

---

[1] SMG was incorporated in Arkansas just weeks before this lawsuit was filed.

[2] Of the thirteen named defendants, the following eleven defendants are moving for transfer: Apple Inc., Samsung Electronics Co., Samsung Semiconductor, Inc., Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, Sony Corporation of America, Sony Computer Entertainment America Inc., Sony Corporation, Sony Computer Entertainment Inc., and Sony Semiconductor Kyushu Corporation Ltd.

1

Alliance, the prosecuting attorneys for the two patents-in-suit, and numerous non-party prior art witnesses. Furthermore, transfer to the Northern District of California would also promote the interests of justice by ensuring live testimony of these key witnesses at trial.

Transfer to California would not inconvenience the plaintiff. SMG is a patent holding company that maintains its principal place of business in the same Newport Beach, California offices as its immediate parent, Acacia Acquisition, and its ultimate parent, Acacia Research Corporation ("Acacia Research"). Acacia's decision to incorporate SMG in Arkansas is a transparent forum-shopping tactic that courts have repeatedly rejected. For example, the District of New Jersey transferred a case brought by an Acacia subsidiary to the Northern District of California, holding that, under the circumstances, the Acacia subsidiary's choice of forum was entitled to little deference.[3] Likewise, the Central District of California transferred at least two cases brought by Acacia subsidiaries, noting in one case that "the actions of Acacia and [the subsidiary] are nothing more than an elaborate scheme to forum shop."[4]

Accordingly, this case should be transferred to the Northern District of California under 28 U.S.C. §1404(a).

## II.   FACTUAL BACKGROUND

### A.   The Lawsuit

SMG's complaint names Apple Inc. ("Apple"); Samsung Electronics Co., Samsung Semiconductor, Inc., Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung"); Nintendo of

---

[3] *Refined Recommendations Corp. v. Netflix, Inc.*, No. 07-4981, 2008 WL 474106, at *5 (D.N.J. Feb. 15, 2008).
[4] *Broadcast Data Retrieval Corp. v. Sirius Satellite Radio Inc.*, 79 U.S.P.Q.2d (BNA) 1603, 1605-06, 2006 WL 1582091, at *2-4 (C.D. Cal. 2006); *Computer Cache Coherency Corp. v. Via Technologies, Inc.*, No. 04-cv-9823, slip op. at 15 (C.D. Cal. April 20, 2005), attached as Exhibit 1 to this Motion.

America Inc. and Nintendo Co., Ltd. (collectively, "Nintendo"); and Sony Corporation of America, Sony Computer Entertainment America Inc., Sony Corporation, Sony Computer Entertainment Inc., and Sony Semiconductor Kyushu Corporation Ltd. (collectively, "Sony"). (Dkt. No. 20.)

SMG's allegations cover a variety of products: Apple's iPhone and iPod touch products, Samsung chips incorporated into the accused Apple products, Nintendo's Wii and GameCube video game systems, and Sony's PlayStation 2 ("PS2") and PlayStation Portable ("PSP") video game systems.  (Dkt. No. 20 ¶¶ 24-40.)

This case is still at a very early stage.  Only one of the thirteen defendants has answered, with the remaining defendants having received extensions of time for answering or otherwise responding to the complaint.   The parties have not propounded any discovery or served disclosures.   And while Nintendo recently filed a Motion to Sever (Dkt. No. 60), Nintendo's motion should have no impact on the instant motion to transfer for the reasons described below.

### B.    The Plaintiff

Plaintiff SMG is a patent holding company based in Newport Beach, California.  (Dkt. No. 20 ¶ 2.)  SMG's ultimate parent is Acacia Research, which owns numerous patent-holding subsidiaries similar to SMG.  (Ex. 2 at 3, Acacia Res. Corp., Annual Report (Form 10-K) (Feb. 26, 2009).)  SMG was incorporated in Arkansas in May 2009, just a few weeks before the filing of this lawsuit.  (Dkt. No. 20 ¶ 56.)

SMG is not the original owner of the patents-in-suit and did not perform any of the research or other work leading to the patent applications.  (Dkt. No. 20 ¶¶ 51-57.)  Instead, SMG acquired the patents from Acacia Acquisition, which is another Acacia entity located in California.   (*Id.*; *see* Ex. 3, Acacia Patent Acquisition Corp. Company Overview, from http://investing.businessweek.com.)  Acacia Acquisition acquired the patents from the original

assignee, a northern California company named Alliance Semiconductor Corporation ("Alliance"), where the named inventor, Chitranjan N. Reddy, had worked.  (Dkt. No. 20-2, 20-3.)

### C.     The Moving Defendants

#### 1.     Apple

Defendant Apple Inc. is responsible for the design, marketing, sales, and distribution of the accused Apple iPhone and iPod touch products.  (Batis Decl.[5] ¶¶ 3-4.)  Apple is incorporated under the laws of California and has its worldwide headquarters in Cupertino, California, in the Northern District of California.  (*Id.* ¶ 2.)  Approximately 7,800 employees work at Apple's Cupertino offices.  (*Id*. ¶ 5.)  Research, design, and development efforts related to the accused iPhone and iPod touch products are centered in, and directed from, Apple's Cupertino headquarters.  (*Id.* ¶ 6.)  Decisions regarding distribution and marketing of the accused products also occur in Cupertino.  (*Id.*)  The vast majority of Apple's witnesses with potentially relevant knowledge of the accused Apple products are located in Cupertino.  (*Id.* ¶ 8.)  Apple does not maintain any retail stores, facilities, employees, or documents in the Western District of Arkansas.  (*Id.* ¶¶ 11-12.)

#### 2.     Samsung

##### a.     Samsung Electronics Co., Ltd. ("SEC")

Defendant SEC is a corporation organized and existing under the laws of South Korea.  (Lee Decl.[6] ¶ 3.)  SEC's principal place of business is Samsung Electronics Building, 1320-10, Seocho 2-dong, Seocho-gu, Seoul 137-857 Korea.  (*Id.*)  SEC manufactures a wide variety of consumer electronics products in Asia, including computer components such as semiconductors.

---

[5] "Batis Decl." refers to the Declaration of Brent Batis, filed concurrently herewith.
[6] "Lee Decl." refers to the Declaration of Huiman Lee, filed concurrently herewith.

(*Id.* ¶ 4.)  Although SEC does not manufacture any products in the United States, SEC sells Samsung products abroad to its United States subsidiaries, which then import, market, sell, and ship the products in the United States.  (*Id.*)  With respect to the "semiconductor chip circuitry" sold by Samsung to Apple, which constitutes the sole basis of SMG's allegations of infringement by Samsung (Dkt. No. 20 ¶ 30), all such products are manufactured by SEC in South Korea and sold to Samsung Semiconductor, Inc., which is located in San Jose, California.  (Lee Decl. ¶ 6.) Samsung has not identified any potentially relevant SEC witnesses or documents located in the United States, let alone the Western District of Arkansas.  (*Id.* ¶¶ 7-8.)

### b.    Samsung Semiconductor Co. ("SSI")

Defendant SSI is a corporation organized and existing under the laws of the State of California, with a principal place of business in San Jose, California.  (*Id.* ¶ 9.)  SSI is the only Samsung entity that is authorized to sell the accused Samsung products in the United States.  (*Id.* ¶ 10.)  All SSI witnesses with potentially relevant knowledge regarding the marketing, sales, and distribution of the accused Samsung products are located in the Northern District of California. (*Id.* ¶ 11.)  All relevant SSI documents relating to the marketing, sales, and distribution of the accused products are similarly stored in San Jose, California.  (*Id.* ¶ 12.)  Samsung has not identified any potentially relevant SSI witnesses or documents located outside the Northern District of California, let alone within the Western District of Arkansas.  (*Id.* ¶ 14.)

### c.    Samsung Austin Semiconductor, LLC ("SAS")

Defendant SAS is a Delaware limited liability company with its principal place of business in Austin, Texas.  (*Id.* ¶ 15.)  SAS has no role with respect to any of the accused products.  Accordingly, it is likely that there are no SAS witnesses or documents relevant to this action.  (*Id.* ¶ 16.)

### d.      Samsung Electronics America, Inc. ("SEA")

Defendant SEA is a New York corporation with a principal place of business in Ridgefield Park, New Jersey.  (*Id.* ¶ 17.)  SEA has no role with respect to any of the accused products.  Accordingly, it is likely that there are no SEA witnesses or documents relevant to this action.  (*Id.* ¶ 18.)

### e.      Samsung Telecommunications America, LLC ("STA")

Defendant STA is a Delaware limited liability company with its principal place of business in Richardson, Texas.  (*Id.* ¶ 19.)  STA has no role with respect to any of the accused products.  Accordingly, it is likely that there are no STA witnesses or documents relevant to this action.  (*Id.* ¶ 20.)

### 3.      Sony

### a.      Sony Corporation of America

Defendant Sony Corporation of America ("SCA") is a New York corporation with its headquarters in New York, New York, and with other offices, including an office in Park Ridge, New Jersey.  (*See* Melarti Decl.[7] ¶¶ 1-2.)  SCA does not design, manufacture, sell, market or distribute any of the accused products.  (*Id.* ¶¶ 4-5.)  SCA does not have any offices or employees in Arkansas.  (*Id.* ¶ 3.)

### b.      Sony Computer Entertainment America Inc.

Defendant Sony Computer Entertainment America Inc. ("SCEA") markets, sells, and distributes the accused Sony products – PlayStation 2 ("PS2") and PlayStation Portable ("PSP") – in the United States, and is headquartered in Foster City, California, near San Francisco in the Northern District of California.  (*See* Buchanan Decl.[8] ¶¶ 2-7.)  SCEA's prospective witnesses

---

[7] "Melarti Decl." refers to the Declaration of Claus Melarti, filed concurrently herewith.
[8] "Buchanan Decl." refers to the Declaration of Sally Buchanan, filed concurrently herewith.

and documents relating to sales, marketing, finances, and general corporate matters are located in Foster City, California.  (*Id.*)  The documents, information, and witness that SCEA has relevant to this lawsuit are not located in Arkansas.[9]

### c.      Sony Corporation

Defendant Sony Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  (*See* Ina Decl.[10] ¶ 2.)  Sony Corporation does not have any offices or other facilities in the United States.  (*Id.* ¶ 3.)  To the extent that Sony Corporation has any documents or things potentially relevant to this case, or any witnesses with potentially relevant knowledge, such documents, things and potential witnesses are located in or reside near its offices in Japan. (*Id.* ¶¶ 8-9.)

### d.      Sony Computer Entertainment Inc.

Defendant Sony Computer Entertainment Inc. ("SCEI") is a Japanese corporation with its principal place of business in Tokyo, Japan.  (*See* Kajii Decl.[11] ¶ 2.)  SCEI does not have any offices or facilities in the United States.  (*Id.* ¶ 3.)  To the extent that SCEI has any documents or things potentially relevant to this case, or any witnesses with potentially relevant knowledge, such documents, things, and potential witnesses are located in or reside near its offices in Japan. (*Id.* ¶¶ 5-7.)

### e.      Sony Semiconductor Kyushu Corporation Ltd.

Defendant Sony Semiconductor Kyushu Corporation Ltd. ("Sony Semiconductor Kyushu") is a Japanese corporation with its principal place of business in Fukuoka, Japan.  (*See*

---

[9] SCEA maintains a small three-person satellite office in Bentonville, Arkansas dedicated to servicing its account with Wal-Mart Stores, Inc.  (*See* Buchanan Decl. ¶ 3.)  However, no relevant documents or witnesses with potentially relevant knowledge are located in the Bentonville satellite office.  (*Id.* ¶¶ 6-7.)

[10] "Ina Decl." refers to the Declaration of Shinji Ina, filed concurrently herewith.

[11] "Kajii Decl." refers to the Declaration of Yusuke Kajii, filed concurrently herewith.

Ina Decl. ¶ 4-5.)  Sony Semiconductor Kyushu does not have any offices or facilities in the United States.  (*Id.* ¶ 6.)  To the extent that Sony Semiconductor Kyushu has any documents or things potentially relevant to this case, or any witnesses with potentially relevant knowledge, such documents, things, and potential witnesses are located in or reside near its offices in Japan. (*Id.* ¶¶ 10-11.)

### D. Third-Party Witnesses and Evidence

A substantial portion of the third-party witnesses and evidence likely to be involved in this case are also located within or close to the Northern District of California.  For example, the named inventor and the original assignee of the patents-in-suit are both located in the Northern District of California.  (Ex. 4 at 1, 12, Alliance Semiconductor Corp., Annual Report (Form 10-K) (July 1, 1999); Ex. 5, Alliance Press Release (September 19, 2008); Dkt. No. 20-2, title page.) Likewise, the prosecuting attorney of the '664 patent and at least one of the prosecuting attorneys for the '279 patent are located in the Northern District of California.  (Ex. 6, '664 patent prosecution history excerpts; Ex. 7, '279 patent prosecution history excerpts; Ex. 8, http://www.finnegan.com/jerryvoight; Ex. 9, http://www.dergnoah.com/html/pollock.html.)

SMG's parent companies are also located in California, less than 400 miles south of the Northern District of California.  As noted above, SMG is one of many patent holding companies operated as subsidiaries of Acacia.  Acacia maintains its principal place of business and presumably the bulk of its documents and relevant witnesses in Southern California.  (*See* Ex. 2, title page, Acacia Res. Corp., Annual Report (Form 10-K) (Feb. 26, 2009).)

Finally, numerous prior art references, such as the Kelleher, Tuljapurkar, Deering, and Snyder references cited during the prosecution of the patents-in-suit, include inventors and companies located within the Northern District of California.  (Ex. 6, '664 patent prosecution history excerpts; Ex. 7, '279 patent prosecution history excerpts; U.S. Pat. No. 5,008,838

(Kelleher); U.S. Pat. No. 5,392,393 (Deering); U.S Pat. No. 5,303,334 (Snyder); U.S. Pat. No. 5,572,655 (Tuljapurkar).)  Many of the companies and witnesses relating to the extensive prior art in this case may need to be subpoenaed for documents and testimony during these proceedings.

## III.   ARGUMENT

"A motion to transfer venue should be granted upon a showing that the transferee venue is clearly more convenient than the venue chosen by the plaintiff."  *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (internal quotation omitted); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  Overwhelming evidence demonstrates that the Northern District of California is clearly more convenient than the Western District of Arkansas for litigating this case.

### A.      Legal Standard

A district court may transfer a civil action to another proper venue "[f]or the convenience of parties and witnesses, [and] in the interests of justice."  28 U.S.C. § 1404(a).  Section 1404(a) is intended "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" and "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

In patent cases, regional circuit law controls transfer motions.  *In re TS Tech USA Corp.*, 551 F.3d at 1319.  In the Eighth Circuit, "a transfer motion requires the court to consider [1] the convenience of the parties, [2] the convenience of the witnesses, [3] the interests of justice, and [4] any other relevant factors when comparing alternative venues."  *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

**B.**     **This Action Could Have Been Brought in the Northern District of California.**

Section 1404(a) allows transfer to any district in which the case "might have been brought."  28 U.S.C. § 1404(a).  Each of the moving defendants that is subject to personal jurisdiction in Arkansas is also subject to personal jurisdiction in the Northern District of California.  *See* 28 U.S.C. § 1400(b); 28 U.S.C. § 1391(c).

**C.**     **The Convenience of the Parties Favors Transfer.**

**1.**     **The Northern District of California is more convenient for the moving defendants.**

Courts have accorded great weight to the location of the defendants' witnesses and documents in the transferee district under section 1404(a), especially in patent cases.  *See Prism Techs., LLC v. Verisign, Inc.*, No. 08-195, 2008 WL 5111044, at *5-6 (D. Neb. Dec. 2, 2008) (citing the lack of witnesses in the forum state and the presence of likely witnesses in the Northern District of California as factors weighing strongly in favor of transfer on convenience grounds); *Biometrics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 876 (E.D. Mo. 2000) (transferring case because "it is more convenient and practical for the case to be tried in that forum where the defendants have a regular place of business, to facilitate the production of books, records and data necessary to discovery and trial of a patent case").  Indeed courts have recognized the particular importance of this factor in patent cases.  *See In re Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (internal quotation omitted).

A number of factors show the convenience of the Northern District of California to the moving defendants.  First, each of the moving defendant entities—*i.e.*, Apple, Samsung, and Sony—has substantial facilities in the Northern District of California, including numerous

potentially relevant witnesses and documents.

Apple.  Apple maintains its worldwide headquarters within the Northern District.  (Batis Decl. ¶ 2.)  Every Apple employee that has been currently identified who may have knowledge potentially related to this case resides in the Northern District of California.  (*Id.* ¶¶ 8-9.) Apple's documents relating to the accused products are also primarily located in the Northern District of California.  (*Id.* ¶ 7.)  Apple has no offices in Arkansas and does not store any potentially relevant documents within this district.  (*Id.* ¶¶ 7, 11-12.)

Samsung.  Of the five Samsung entities accused of infringement, the only one that sells the accused products in the United States—SSI—is located in San Jose, which is within the Northern District of California.  All SSI witnesses with potentially relevant knowledge of the marketing, sales, and distribution of the accused products in the United States are located in the Northern District of California.  (Lee Decl. ¶ 11.)  SSI documents relating to the marketing, sales, and distribution of the accused products are similarly located in the Northern District of California.  (*Id.* ¶ 12.)

Sony.  Likewise, SCEA has three substantial offices in Foster City, California, including its headquarters.  (Buchanan Decl. ¶ 2.)  Every prospective witness identified by SCEA at this time is located at or near its Foster City, California offices within the Northern District of California.  (*Id.* at ¶ 7.)

The parties have identified at least 9 potential witnesses within the Northern District of California:

| **Disclosed Witness** | **Identifying Party** | **Department/Title** | **Location** |
|---|---|---|---|
| Robert Drebin | Apple | Mobile Silicon Graphics | Cupertino, California |
| Kenneth Dyke | Apple | Graphics & Imaging | Cupertino, California |

| Gregory Joswiak | Apple | iPod Marketing | Cupertino, California |
| Michael Culbert | Apple | Platform Architecture | Cupertino, California |
| Nicholas (Ki Yong) Nam | SSI | Marketing Specialist for the accused products | San Jose, California |
| Jean (Jeong Jin) Oh | SSI | Sales Specialist for the accused products | San Jose, California |
| Tai (Taisik) Won | SSI | Sales Director for the accused products | San Jose, California |
| Peter Simonson | SCEA | Manager of Financial Planning & Analysis | Foster City, California |
| John Koller | SCEA | Director of Hardware Product Marketing | Foster City, California |

Second, in addition to the vast number of potential witnesses actually located within the Northern District of California, the proposed venue is also more convenient to nearly all of the U.S. witnesses outside the Northern District of California that are likely to be identified by the moving defendants. Nearly all potential witnesses in this action would need to travel farther – in many instances by thousands of miles – to attend trial in Arkansas rather than in California.

Third, each of the foreign moving defendants is located in Asia. Sony Corporation, Sony Semiconductor Kyushu, and SCEI are based in Japan where all their likely witnesses reside. (Ina Decl. ¶¶ 2-6, 8-11; Kajii Decl. ¶¶ 2-4, 6-7.) Similarly, SEC is based in Korea, where all potentially relevant SEC witnesses or documents are located. (Lee Decl. ¶ 7.) The Northern District of California is a more convenient venue for travel from Asia than is Arkansas. Generally, flights from Asia enter the United States through a west-coast airport, such as Los Angeles or San Francisco, and there are numerous daily nonstop flights from Tokyo or Seoul to San Francisco. On the other hand, there are no non-stop flights from Seoul or Tokyo to

Fayetteville, Arkansas.  (Ex. 10, flight printouts.)  *See In re Volkswagen*, 371 F.3d 201, 204 n.3 (Fed. Cir. 2004) (noting that the existence or non-existence of nonstop flights from the residences of the likely witnesses to the existing venue can impact the analysis of travel time in a transfer motion).

### 2.   The Northern District of California is also more convenient for SMG.

Courts have also transferred cases where the proposed transferee district was closer to the plaintiff's principal place of business than the plaintiff's choice of forum.  *E.g.*, *Thornton Drilling Co. v. Stephens Prod. Co.*, No. 06-00851, 2006 WL 2583659, at *3 (E.D. Ark. Sept. 6, 2006).

Here, as conceded in its First Amended Complaint, Plaintiff's principal place of business is Newport Beach, California.  (Dkt. No. 20 ¶ 2.)  Apart from SMG's filing for incorporation in Arkansas just a few weeks prior to this suit (*id.* ¶ 56), Defendants know of no other connection between SMG and this district.  Therefore, the Northern District of California would also be more convenient for Plaintiff SMG.  *See In re Genentech*, 566 F.3d at 1345 (plaintiff's ability to travel more easily to the transferee district in the Northern District of California than to plaintiff's choice of forum in the Eastern District of Texas weighs in favor of transfer).

Accordingly, the fact that the vast majority of identified party witnesses and documents reside in the Northern District of California or in locations more conveniently located to the Northern District strongly favors transfer.  *E.g.*, *Affinity Labs of Texas, LLC v. Apple Inc.*, No. 09-47, at 7-8 (E.D. Tex. Aug. 25, 2009) (attached as Ex. 11); *Prust v. Apple Inc.*, No. 09-92, at 1-2 (E.D. Tex. Oct. 7, 2009) (attached as Ex. 12).

### D.   The Convenience of the Witnesses Favors Transfer.

The location of witnesses, especially non-party witnesses, in the Northern District of California also weighs heavily in favor of a transfer.  Courts have recognized that "[t]he

convenience of non-party witnesses is generally considered to be one of the most important factors to be weighed in the venue transfer analysis." *E.g.*, *Int'l Adm'rs., Inc. v. Pettigrew*, 430 F. Supp. 2d 890, 900 (S.D. Iowa 2006); *Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*, 435 F. Supp. 2d 578, 591 (E.D. Tex. 2006).   Transferring to a district with many witnesses also advances the strong judicial preference for live testimony at trial. *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999) (holding, *inter alia*, that "the preference of courts for live testimony as opposed to depositions" weighed in favor of transfer because "the subpoena power of the district court in [the transferee district] would ensure their live testimony at trial").

### 1.     The original patent assignee, named inventor, and prosecuting attorneys are located in the Northern District of California.

Numerous critical non-party witnesses relating to the development of the alleged inventions claimed in the patents-in-suit reside in northern California.  SMG's complaint touts Alliance's achievements in the 1980s and 1990s (Dkt. No. 20 ¶¶ 51-53), and former Alliance employees will inevitably be witnesses regarding conception, reduction to practice, prior art, and any alleged success of the claimed invention.  As discussed above, Alliance has maintained its headquarters in the Northern District of California.  (Ex. 4 at 1, 12, Alliance Semiconductor Corp., Annual Report (Form 10-K) (July 1, 1999); Ex. 5, Alliance Press Release (September 19, 2008).)  In addition, the named inventor on the patents-in-suit, Chitranjan N. Reddy, resides in the Northern District of California.  (*See* Dkt. No. 20-2, title page.)  The prosecuting attorney of the '664 patent and at least one of the prosecuting attorneys for the '279 patent are located in the Northern District of California, and will be subject to discovery on the prosecution of the patents-in-suit.  (Ex. 6, '664 patent prosecution history excerpts; Ex. 7, '279 patent prosecution history excerpts; Ex. 8, http://www.finnegan.com/jerryvoight; Ex. 9, http://www.dergnoah.com/html/pollock.html.)

Thus, the inventor, prosecuting attorneys, and the company at which the invention allegedly occurred (including any witnesses to the alleged conception and reduction to practice of the claimed invention) are all located in the Northern District of California.

### 2. SMG's parent companies are located in California.

SMG's parent companies also maintain their principal places of business and presumably the bulk of their documents and relevant witnesses in Southern California. Due to the close corporate relationship between SMG and its parent companies, including the prior ownership of the patents by Acacia Acquisition, many documents and witnesses related to SMG's parents are likely to be relevant to this case. The Northern District of California is a much closer and more convenient venue to companies located in southern California than the Western District of Arkansas.

### 3. The Northern District of California contains many witnesses and companies relating to prior art references.

The Northern District of California has been a hub of graphics accelerator and memory development in the 1980s and 1990s and remains so today. As a result, numerous prior art references include inventors and companies located within the Northern District of California. Examples include the Kelleher, Tuljapurkar, Deering, and Snyder references cited during the prosecution of the patents-in-suit. (Ex. 6, '664 patent prosecution history excerpts; Ex. 7, '279 patent prosecution history excerpts; U.S. Pat. No. 5,008,838 (Kelleher); U.S. Pat. No. 5,392,393 (Deering); U.S Pat. No. 5,303,334 (Snyder); U.S. Pat. No. 5,572,655 (Tuljapurkar).) Many of these companies and witnesses will likely need to be subpoenaed for documents and testimony during these proceedings.

Accordingly, the location of many key party and non-party witnesses in the Northern District of California also weighs heavily in favor of transfer.

### E.    The Interests of Justice and Other Factors Favor Transfer.

In addition to the Northern District of California being more convenient to the parties, the parties' witnesses, and the non-party witnesses, the interests of justice and other relevant factors favor transfer to the Northern District.   The Eighth Circuit's *Terra* decision recognizes that courts may consider a wide variety of nonexclusive factors in determining whether transfer is warranted.   *See Terra Int'l*, 119 F.3d at 696.   The two primary factors for this case are the localized interest of the Northern District of California related to the subject matter of this dispute and the limited deference that should be afforded to SMG's choice of forum.

### 1.    Localized interests favor transfer to the Northern District of California, which is at the center of the accused activity.

"[T]he local interest in having localized controversies decided at home" weighs in favor of transfer.[12]   *See Viasystems Techs., Corp. v. Forest City Commercial Dev., Inc.*, No. 08-124, 2008 WL 2064971, at *4 (E.D. Mo. May 14, 2008).   In patent cases, courts have often referenced localized interests by looking to the "center of gravity" of the accused activity.   *E.g.*, *Aten Int'l Co. v. Emine Tech. Co.*, No. 08-253, 2009 WL 1809978 (E.D. Tex. June 25, 2009) (transferring to California); *cf. Prism Techs., LLC*, 2008 WL 5111044, at *4-6 (transferring case based, in part, on focus of accused activities being in northern California).[13]

---

[12] As stated recently in the *Sandvik Intellectual Property AR* case: "[T]he court places itself in the shoes of a juror and asks the question that every juror asks, which is 'why was I called away from work or my home to hear this case?' Beyond civic duty, which is present in every district, the answer in this case would be hard for a juror to take: to resolve a dispute between a Pennsylvania and a Swedish Company concerning a product that is not manufactured [in North Carolina] and was purportedly invented by people who live very far away." *Sandvik Intellectual Property AB v. Kennametal Inc.*, No. 09-163, slip op. at 16-17 (W.D.N.C. Nov. 5, 2009) (attached as Ex. 13).

[13] *See also, e.g.*, *Estate of Antonious v. Yonex Corp.*, No. 08-3501, 2009 WL 1346617 (D.N.J. May 13, 2009); *Data Retrieval Tech., LLC v. Sybase, Inc.*, No. C08-1702, 2009 WL 960681, at *3 (W.D. Wash. Apr. 8, 2009); *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *3-4 (S.D. Fla. Feb. 23, 2009); *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d

As detailed above, nearly all relevant activities occurred in the Northern District of California or are more conveniently located to the Northern District.  Moreover, this case holds special significance to the Northern District of California due to the patents' subject matter, which relates to components of a computer graphics display system.  For example, "California is the largest employer of computer and video game personnel in the nation, accounting for approximately 40 percent of total industry employment nationwide."  (Ex. 14, Entertainment Software Association Economic Data, http://www.theesa.com/facts/econdata.asp.)  These strong ties establish a "factual connection" between the industries at-issue in this case and the Northern District of California.  *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 769 (E.D. Tex. 2009).

### 2.    SMG's choice of forum does not weigh against transfer.

A plaintiff's residence in its chosen forum bears no substantial weight where, as here, the forum lacks a significant connection to the dispute.  *See Wilson v. United States*, No. 05-562, 2006 WL 3431895 (E.D. Ark. Nov. 28, 2006) (transferring case where witnesses and documents were located in transferee district, even though plaintiff resided in the transferor district); *Int'l Adm'rs, Inc.*, 430 F. Supp. 2d at 901; *Prism Techs., LLC*, 2008 WL 5111044, at *4-6.  As a patent holding company located in California, SMG conducts no business in the Western District of Arkansas.  Allowing SMG to circumvent section 1404(a) by incorporating in the district just a few weeks before filing suit would improperly encourage forum shopping by other plaintiffs who could likewise incorporate a holding company in any desired forum.[14]

Recognizing the minimal ties between Acacia subsidiaries and their selected forums,

---

936, 939 (E.D. Va. 2001); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000).

[14] *See Media Queue, LLC v. Netflix, Inc.*, No. 08-402, 2009 WL 464456, at *4 (E.D. Okla. Feb. 24, 2009) (transferring case based, in part, on finding that plaintiff's registration with the Secretary of State soon before filing the case was an "apparent effort[] to maneuver the facts to establish venue"); *Surfer Internet Broad. of Miss. v. XM Satellite Radio Inc.*, No. 07-34, 2008 WL 1868426, at *2-3 (N.D. Miss. Apr. 24, 2008) (incorporation seven days before suit).

several courts have afforded the choice-of-forum by Acacia subsidiaries only minimal weight.  In *Refined Recommendations Corp.*, the District of New Jersey transferred a case brought by an Acacia subsidiary to the Northern District of California, holding that the subsidiary's "choice warrants less deference," because transfer under 1404(a) to the Northern District of California "will not result in any inconvenience to Plaintiff" and "the operative facts of this lawsuit have a large connection to the N.D. Cal."  *Refined Recommendations Corp. v. Netflix, Inc.*, No. 07-4981, 2008 WL 474106, at *5 (D.N.J. Feb. 15, 2008).

Likewise, in *Broadcast Data Retrieval Corp.*, the Central District of California transferred to the Southern District of New York, holding that the Acacia subsidiary's "choice of forum is entitled to minimal deference," because plaintiff "BDRC was formed three weeks prior to the filing of this action" and "has failed to demonstrate that in those three weeks it engaged in any activity that would give this District a significant connection to this action."  *Broadcast Data Retrieval Corp. v. Sirius Satellite Radio Inc.*, 79 U.S.P.Q.2d (BNA) 1603, 1605-06, 2006 WL 1582091, at *3 (C.D. Cal. 2006).  Indeed, the *Broadcast Data Retrieval* court found that "[i]t would appear to this Court that the actions of Acacia and [the subsidiary] are nothing more than an elaborate scheme to forum shop."[15]  *Id.* at 1606.

As in *Broadcast Data Retrieval Corp.*, Acacia is again attempting to forum shop through its newly created subsidiary, SMG.  SMG was created merely weeks before this lawsuit was filed.  SMG lacks any significant contacts with the Western District of Arkansas; moreover, there has not even been sufficient time for SMG to create significant contacts with this forum.  Thus, as in *Broadcast Data Retrieval Corp.*, the plaintiff's choice of forum should be afforded only

---

[15] In *Computer Cache Coherency Corp.*, the Central District of California also transferred a suit from Acacia's home forum to the Northern District of California, concluding that the Acacia subsidiary's "choice of forum was only entitled to limited deference."  No. 04-cv-9823, slip op. at 15 (attached as Ex. 1).

minimal consideration.

**F.     The Three Defendant Groups (Nintendo, Sony, and Apple/Samsung) Are Misjoined.**

This motion to transfer is consistent with Nintendo's recently filed motion to sever.  (Dkt. No. 60.)  The Federal Rules permit joinder of multiple defendants in the same lawsuit only if the right to relief against the defendants arises from a common transaction or occurrence.  Fed. R. Civ. P. 20, 21.  SMG's complaint divides the defendants into three groups—(1) Apple and the Samsung entities, (2) the Sony entities, and (3) the Nintendo entities—and concedes that these groups sell different and unrelated products.  (*E.g.*, Dkt. No. 20 ¶¶ 60, 68, 74, 83.)  SMG's complaint does not allege that the accused products share common chipsets or an industry standard.  Nor does SMG's complaint allege that any of these groups has engaged in any coordinated scheme to design or market any accused product.

The moving parties agree with Nintendo that the three defendant groups are misjoined, and that ultimately, the three defendant groups should not be part of a single trial.  In cases where the plaintiff has not only misjoined unrelated defendants but also has brought the action in an inconvenient venue, courts have severed the actions against the misjoined defendants from each other and transferred one or more of the severed actions.  *See, e.g.*, *Siddi v. Ozark Aircraft Sys., LLC*, No. 05-cv-5170, 2006 U.S. Dist. LEXIS 84882, at *14-15 (W.D. Ark. Nov. 21, 2006) (finding that "severance under Rule 21 is proper to facilitate a transfer of certain claims to a more convenient forum."); *Naschem Co., Ltd. v. Blackswamp Trading Co.*, No. 08-730, 2009 WL 1307865, at *1-3 (W.D. Wis. May 8, 2009) (severing claims filed against a distinct group of accused infringers (Sportsline and its employees) from the remaining defendants and transferring the severed action).

Accordingly, the moving defendants request that the Court sever the action against

19

Nintendo from the action against the moving defendants, and then transfer the action against the moving defendants to the Northern District of California.  If, however, the Court does not grant Nintendo's motion to sever, it should transfer the entire action, including the claims against Nintendo, to the Northern District of California.[16]

**IV.    CONCLUSION**

Litigating this case in the Northern District of California would be vastly more convenient for the parties and witnesses than litigating in the Western District of Arkansas and would promote the interests of justice.  Consequently, the Court should transfer the case to the Northern District of California.

Date: November 25, 2009                          Respectfully submitted,

                                                 By: */s/ Timothy S. Teter*

                                                 Timothy S. Teter (CA #171451)
                                                 Benjamin G. Damstedt  (CA #230311)
                                                 Iain R. Cunningham (CA #232357)
                                                 COOLEY GODWARD KRONISH LLP
                                                 Five Palo Alto Square
                                                 3000 El Camino Real
                                                 Palo Alto, CA 94306-2155
                                                 Phone:  (650) 843-5000
                                                 Fax:     (650) 857-0663
                                                 teterts@cooley.com
                                                 bdamdstedt@cooley.com
                                                 cunninghami@cooley.com

                                                 Kevin A. Crass (84029)
                                                 Friday, Eldredge & Clark LLP
                                                 400 West Capitol Avenue, Suite 2000
                                                 Little Rock, Arkansas 72201-3522
                                                 Phone:  (501) 376-2011

---

[16] Nintendo of America Inc.'s primary place of business is Redmond, Washington.  In addition, Nintendo has a sales office in the Northern District of California.  Nintendo Co. Ltd.'s primary place of business is Kyoto, Japan.

crass@fec.net

Attorneys for Defendant Apple Inc.

By: */s/ Damon Young (with permission)*

Damon Young (TX Bar No. 64050)
YOUNG, PICKETT & LEE
4122 Texas Boulevard
Texarkana TX  75503
(903) 794-1303
dyoung@youngpickettlaw.com

Attorneys for Defendants Samsung
Electronics Co., Samsung Semiconductor,
Inc., Samsung Austin Semiconductor,
LLC, Samsung Electronics America, Inc.,
and Samsung Telecommunications
America, LLC

By: */s/ Lewis V. Popovski (with permission)*

Richard S. Gresalfi (NY #1972777)
Michelle Carniaux (NY #2596120)
Lewis V. Popovski (NY #2443489)
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Phone:     212.425.7200
Fax:         212.425.5288
rgresalfi@kenyon.com
mcarniaux@kenyon.com
lpopovski@kenyon.com

Steven W. Quattlebaum (Ark. #84127)
QUATTLEBAUM, GROOMS, TULL &
BURROW PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Phone:     501.379.1700
quattlebaum@qgtb.com

Attorneys for Defendants Sony

21

Corporation, Sony Corporation of
America, Sony Computer Entertainment
Inc., Sony Computer Entertainment
America Inc., and Sony Semiconductor
Kyushu Corporation Ltd.

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 25th day of November, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Adam Vincent Floyd
afloyd@fblawllp.com, achambers@fblawllp.com, aepley@fblawllp.com,
cporter@fblawllp.com, jhagan@fblawllp.com

Benjamin Damstedt
bdamstedt@cooley.com, elliottds@cooley.com

Brandon B. Cate
bcate@qgtb.com, pcooper@qgtb.com, sjackson@qgtb.com

Brian Buss
bbuss@fblawllp.com, cporter@fblawllp.com

Carly Slack Anderson
canderson@texarkanalaw.com

Damon Young
dyoung@youngpickettlaw.com, yp1303@aol.com

Darin Glasser
dglasser@omm.com

Geoffrey P. Culbertson
gpc@texarkanalaw.com, aross@texarkanalaw.com

Grant E. Kinsel
gkinsel@perkinscoie.com, docketla@perkinscoie.com, ivasquez@perkinscoie.com

H. Kenneth Prol
kprol@fblawllp.com, cporter@fblawllp.com

Iain Robert Cunningham
icunningham@cooley.com, jcorrell@cooley.com

J. Gregory Magness
magness@hardinlaw.com, jstogner@hardinlaw.com

Joseph Daniel Gray
jgray@fblawllp.com, cporter@fblawllp.com

Kent J. Cooper
kcooper@fblawllp.com, cporter@fblawllp.com

Kevin A. Crass
crass@fec.net, tmaness@fec.net

Lewis V. Popovski
LPopovski@kenyon.com

Marshall S. Ney
mney@mwlaw.com, jgarrett@mwlaw.com, jlarey@mwlaw.com

Matthew Jacob Faust
mfaust@kenyon.com

Michael Myers
mmyers@omm.com

Michelle Carniaux
mcarniaux@kenyon.com

Nicholas H. Patton
nickpatton@texarkanalaw.com, docket@texarkanalaw.com, mlong@texarkanalaw.com

Richard S. Gresalfi
RGresalfi@kenyon.com

Ryan Yagura
ryagura@omm.com

Steven W. Quattlebaum
quattlebaum@qgtb.com, khove@qgtb.com, troberts@qgtb.com

Timothy Teter
tteter@cooley.com, scaamal@cooley.com

By: /s/ Timothy S. Teter

Timothy S. Teter

804038/PA

24